In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00021-CV


______________________________




STATE FARM MUTUAL AUTOMOBILE 


INSURANCE COMPANY, Appellant



V.



JAMES BURGE, Appellee




 


On Appeal from the Fifth Judicial District Court


 Cass County, Texas


Trial Court No. 08-C-317




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 State Farm Insurance, (1) the sole appellant in this case, has filed a motion seeking to dismiss
its appeal. Pursuant to Rule 42.1 of the Texas Rules of Appellate Procedure, we grant its motion. 
See Tex. R. App. P. 42.1.

 We dismiss the appeal.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: June 3, 2009 

Date Decided: June 4, 2009



1. In most of the pleadings, including the order of dismissal, the appellant is referred to as
"State Farm Insurance." In its notice of appeal, the appellant is referred to as "State Farm Mutual
Automobile Insurance Company," and in its motion to dismiss, the appellant is referred to as "State
Farm Automobile Insurance Company." We refer to the appellant as "State Farm Insurance" in this
opinion.


enUsed="true"
 DefSemiHidden="true" DefQFormat="false" DefPriority="99"
 LatentStyleCount="267">
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00036-CV

                                                ______________________________

 

 

         MICHAEL A. ZANCHI, M.D., MICHAEL A. ZANCHI,
M.D., P.A.,

AND PARIS REGIONAL ANESTHESIA,
P.A., Appellants

 

                                                                V.

 

                  REGINALD KEITH LANE, INDIVIDUALLY, AND AS

PERSONAL REPRESENTATIVE OF
THE ESTATE OF

JUAMEKA CYNARRA ROSS,
DECEASED, ET AL., Appellees

 

 

                                                                                    
              

 

 

                                       On Appeal from the 62nd
Judicial District Court 

                                                             Lamar County, Texas

                                                            Trial
Court No. 79324

 

                                                                                                  


 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss

Concurring Opinion by Justice Carter

Dissenting Opinion by Justice Moseley








                                                                   O P I N I O N

 

            Twenty-four-year-old
Juameka Cynarra Ross died
after undergoing a splenectomy at Paris Regional
Medical Center.  Michael A. Zanchi, M.D.,[1]
the anesthesiologist, was sued by Reginald Keith Lane, individually, and as
personal representative of Ross estate, for medical negligence allegedly
resulting in Ross death.[2]  Lane filed the original petition on April 21,
2010, but did not serve Zanchi with process until
September 16, 2010.[3]  In the interim, on August 19, 2010, Lane
mailed the expert report of Jeffrey Wagner, M.D.,[4] to Zanchi by certified mail, return receipt requested, as
required by Section 74.351(a) of the Texas Civil Practice and Remedies
Code.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a)
(West 2011).  Zanchi
filed a motion to dismiss the lawsuit, alleging that any transmittal of the
expert report to him before the date he was served with process was no service
at all, because he was not a party to the lawsuit.[5]  The trial court denied Zanchis
motion to dismiss.  Because Zanchi was a party to the lawsuit when he was timely served
with the expert report, we affirm the trial courts order.[6]  

Zanchi Was a Party to the Lawsuit When Timely Served with the Expert Report

            A
trial courts ruling on a motion to dismiss under Section 74.351(b) is reviewed
for an abuse of discretion.  Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(b) (West 2011); Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 87778 (Tex. 2001).  A trial court abuses its discretion when it
reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law.  In re Bass, 113 S.W.3d 735, 738 (Tex. 2003); Yilmaz v. McGregor, 265 S.W.3d 631, 63536
(Tex. App.Houston [1st Dist.] 2008, pet. denied).  When the facts are not in dispute, the
question of whether service satisfied the requirements of Section 74.351(a) is
a purely legal question.  Questions of
law are subject to a de novo review.  See Oak Park, Inc. v. Harrison, 206 S.W.3d 133, 137 (Tex. App.Eastland 2006, no
pet.).[7]

            Zanchi contends the trial court erred by denying his motion
to dismiss Lanes suit because Lane did not timely serve Zanchi
with an expert report, as required by Section 74.351 of the Texas Civil
Practice and Remedies Code.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351 (West
2011).  Pursuant to Section 74.351(a), a
claimant must serve on each party or the partys attorney one or more expert
reports no later than the 120th day after the date the original petition was
filed.  Tex.
Civ. Prac. & Rem. Code Ann. §
74.351(a).  By statute, if an expert report
is not served within the specified time period, the court must dismiss the
claim with prejudice and award to the affected health care provider reasonable
attorneys fees and costs of court.  Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(b)(1), (2).  Each defendant physician whose conduct is
implicated in a report must file and serve any objection to the sufficiency of
the report not later than the twenty-first day after the date the report was
served, subject to waiver of those objections. 
Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(a).

            Here,
because Lane filed his lawsuit April 21, 2010, he was required to serve one or
more expert reports on Zanchi or Zanchis
attorney by August 19, 2010, the 120th day after the filing of the original
petition.  Lane asserts that he timely
served his expert report on Zanchi August 19, 2010,
via certified mail, return receipt requested. 
It is undisputed that, at that time, Zanchi
had not yet been served with process and that he was not served with process
until September 16, 2010.  Zanchi, therefore, contends that Lane did not serve his
expert report on a party before the expiration of the 120-day period, as
required.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).  Zanchi maintains
that the trial court was therefore required, upon motion, to dismiss the
suit.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)(2).

            In
support of his position, Zanchi points to the
language of the statute, which provides that a claimant must serve on each
party or the partys attorney one or more expert reports no later than the
120th day after the original petition was filed.  See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(b)(2).  The term party is not defined in Section
74.351 or Chapter 74 of the Texas Civil Practice and Remedies Code.  Any legal term or word of art used in this
chapter, not otherwise defined in this chapter, shall have such meaning as is
consistent with the common law.  Tex. Civ. Prac.
& Rem. Code Ann. § 74.001(b) (West 2011).  The question then, of whether Zanchi was a party to the lawsuit when the expert report
was served, hinges on the meaning of party under the common law.  We conclude that, under the common law and
under the statutory scheme, one is a party if so named in a pleading, whether
or not yet served.

            Zanchi contends that, under the common law, to be a party,
one must generally be named in the pleadings and . . . be served, accept or
waive service, or make an appearance.  Yilmaz, 265
S.W.3d at 637.  Yilmaz involved a health care
liability claim in which the original petition was filed in March 2007.  Attempts to serve Yilmaz
with process were unsuccessful.  McGregor
alleged service of the expert report one day before the statutory
deadline.  Because Yilmaz
was not served with process before service of the expert report, he filed a
motion to dismiss, claiming the expert report was served at a known wrong
address, at a time when he was not a party to the suit.  Id. at
635.  The trial court denied the motion
to dismiss.

            On
appeal, the First Court of Appeals ruled that Yilmaz
was not a party to the lawsuit at the time the expert report was served and,
thus, that the motion to dismiss should have been granted.  In defining a party as one who must be named
in the pleadings and . . . be served, accept or waive service, or make an
appearance, Yilmaz
relied on Ex parte Bowers, 886 S.W.2d
346 (Tex. App.Houston [1st Dist.] 1994, writ dismd w.o.j.).  In Bowers, the defendant complained that he
did not receive notice of an injunction and was therefore not bound by its
provisions.  In its discussion of whether
Bowers was bound by the injunction, the court stated, A party to a suit
generally is one named in the pleadings, who is served, accepts or waives
service, or appears, and who participates at trial and contests the cause of
action.  Id. at 349.  Bowers relies on Mapco, Inc. v. Carter,
817 S.W.2d 686 (Tex. 1991), in support of this definition.  In addition, Yilmaz relies on Mapco for the proposition that [m]erely being named in a petition as a defendant does not
make one a party to the lawsuit.  Yilmaz, 265
S.W.3d at 637.

            Our
reading of Mapco does not support
that proposition.  In Mapco, the Texas Supreme Court ruled
that a judgment may not be entered against a party not before the trial
court.  In that case, the Carters sued
Mapco Underground Storage of Texas, Inc., and Texasgulf,
Inc.  Even though a related corporation,
Mapco, Inc., was not named in the pleadings and was not served with process, a
judgment was entered against it.  In
reversing that judgment, the court stated, In no case shall judgment be
rendered against any defendant unless upon service, or acceptance or waiver of
process, or upon an appearance.  Mapco, Inc., 817 S.W.2d at 687.  Mapco does not state, or even support
the proposition, that one is not a party until that one is served with
process, accepts or waives such service, or makes an appearance.  Three of our sister courts have adopted the
definition of party as used in Yilmaz.[8]  In each of those decisions, the discussion
has pointed to Mapco as the source of
this definition.  Our analysis leads us
to the belief that such reliance is misplaced.

            While
Mapco recognizes the well defined
concept that a party cannot be subjected to the jurisdiction of the court when
that party has not been served with process, or has otherwise accepted or
waived service, it did not undertake to define the term party.  Indeed, a person has no duty to participate
in proceedings if the person has not been properly served, even if the person
later becomes aware of the proceedings.  Ross v. Natl Ctr. for the Employment of the
Disabled, 197 S.W.3d 795, 79798 (Tex. 2006) (per curiam).  The concept of personal jurisdiction,
however, as discussed in Mapco and in
Ross, is distinct from the concept of
party status.  The Texas Supreme Court
did not hold, in Mapco or Ross, that one named as a defendant in a
lawsuit is not a party to that suit
unless and until that person has been served, accepts or waives service, or
makes an appearance.  While it is true
that a party must be served, accept or waive service, or otherwise appear in
order for a judgment to be rendered against that party, it does not logically
follow that such a party, named in the pleadings on file with the district clerk,
is not a party to the lawsuit in which the party has been specifically named,
merely because there is no obligation to participate until brought within the
jurisdiction of the court.  Stated
another way, a party named in the pleadings is no less a party to the lawsuit
even though that party has yet to be served.

            Where
a health care provider, and prospective defendant, is served with an expert
report before suit is even filed against the provider, he or she is not a
party, but becomes one when a claim is asserted against him or her in a
suit.  Poland v. Ott, 278 S.W.3d 39, 4849 (Tex. App.Houston
[1st Dist.] 2008, pet. denied) (noting distinction in Chapter 74 between
use of party after suit filed and physicians, and health-care providers
before suit filed).  See also Daybreak Cmty. Servs.,
Inc. v. Cartrite, 320 S.W.3d 865, 87172 (Tex.
App.Amarillo 2010, no pet.) (party status established when suit filed
against him or her).

            Not
many years ago, the Texas Supreme Court affirmed that a party who becomes
aware of the proceedings without proper service of process has no duty to
participate in them, thus tacitly recognizing that one can be a party to a
legal proceeding even though not served with process.  Caldwell
v. Barnes, 154 S.W.3d 93, 97 n.1 (Tex. 2004); see also Ross, 197 S.W.3d at 79697 (trial court had no
jurisdiction either to enter judgment or enforce it against party who had
neither been served nor appeared).

            The
Texas Rules of Civil Procedure generally refer to those named in pleadings as
parties regardless of whether they have been served with process.  The most prominent examples are connected to
the pleading that initiates a lawsuit. 
The plaintiffs petition must list the parties, thus, in every case,
requiring that the designation as parties precedes those parties being served
with process.  Tex. R. Civ. P. 79. 
The Civil Case Information Sheet promulgated under Rule 78a also directs
the plaintiff to complete it with the names of the parties named as
defendants, certainly contemplating that the defendants are considered parties
before being served with process.  See Tex.
R. Civ. P. 78a.  There are other
examples.[9]

            The
term party is defined by Blacks Law Dictionary as One by or against whom a
lawsuit is brought <a party to the lawsuit>.  Blacks
Law Dictionary 1231, 1232 (9th ed. 2009).  A party is one of the litigants in a legal
proceeding; a plaintiff or a defendant in a suit.[10]  Websters
Unabridged Dictionary 1416 (2d ed. 2001).  That definition is consistent with the
longstanding definition of the term from the Texas Supreme Court stating that a
party to an action is one who is directly interested in the subject matter
in issue, who has a right to make defense, control the proceedings, or appeal
from the judgment.  Hodde v. Susan, 58 Tex. 389, 393 (1883). 
None of these definitions require that one must first be served, accept
or waive service, or enter an appearance before becoming a party; and we do
not believe that to be the law or the intent of the statute in question here.

            There
are also legitimate practical and policy reasons that support a rule that, for
these purposes, one should be recognized as a party when named in a lawsuit,
even before being served with process.

            The
120-day statutorily decreed period, within which an expert report must be
served, starts when suit is filed, that is, when the parties are named, not
from when they are served.  Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(a). 
Recognizing persons named in a pleading as parties at that time thus
fits better with the overall structure of the statute and with the general
sense of what a party is, i.e., a person named in the style of a pleading,
not the redefinition of a party as becoming one only when served.

            The
arguments in this case have revealed two competing problem scenarios, both of
which arise from the unstated, but not-always-correct, legislative assumption
that service of process will have been accomplished before the 120-day
expert-report deadline.

            The
first problem scenario is set up if one does not become a party until served
with process and if service of process is not accomplished by the end of the
120-day deadline.  If such is the case,
as is suggested by Zanchi here, the suit must be
dismissed for lack of service of the required expert report.  That is a draconian result, based on an
interpretation of the statute that is not clearly dictated by the statutes
language and is based on dicta of doubtful derivation, as is shown above.

            The
alternative problem scenario arises if, as Lane suggests, one becomes a party
when suit is filed or when the party is first named in a pleading, but service
of process is delayed beyond the 120-day expert-report deadline.  In such case, the parties are not faced with
the draconian result of the first scenario, but with what is certainly a less
extreme problem.  Based on the statute,
the defendant could have a possible deadline to object to the expert report
before he or she is even obliged to answer the lawsuit.

            The
first scenario results in the loss of a claim. 
The second scenario results in a much less severe situation.  Faced with the second scenario, it could be
said that, since the party has not yet been served with process in the suit,
there is no obligation to respond in any way until that occurs.  But, even if a party who has been served with
an expert report, but who has not yet been served with process, decides that,
out of an abundance of caution, he or she will object to the report within the
time period specified by the statute, that burden or harm is significantly less
than on the claimant in the first scenario. 
The second scenario may be seen as an anomaly that may suggest further
legislative action, but that relatively minor anomaly should not dictate that
one is not a party until served, and thus automatically require a dismissal of
a claim when service of process has not been accomplished within 120 days after
filing suit.  That might be seen as
throwing the baby out with the bath water.

            The
purpose of the expert report requirement is to provide a shield, a mechanism to
weed out frivolous suits and not require medical defendants to spend a lot of
time and money defending a frivolous case, or at least to keep that period
short, i.e., a maximum of 120 days.  That
purpose is amply served by recognizing one as a party when he or she is named
as one in a pleading rather than when, later, he or she is served with process;
without the draconian result posed by the converse.

            In
this case, Zanchi was interested in the subject
matter in issuehe was named in Lanes original petition as a defendant alleged
to have committed acts of medical negligence allegedly resulting in the death
of Ross.  As such, Zanchi
had the right to make a defense, participate in the proceedings, and appeal
from any judgment rendered against him.  Zanchi became a party to the underlying lawsuit when he was
named in Lanes original petition filed with the district clerk.[11]  Having so determined, we turn to the issue of
whether Zanchi was timely served with an expert
report.

            It
is undisputed that the expert report was to be served on or before August 19,
2010.  The record indicates that Lanes
attorney mailed the expert report and curriculum vitae (CV) of Jeffrey Wagner,
M.D., via certified mail, return receipt requested, to Zanchi
at Paris Regional Medical Center on August 19, 2010.  The green card indicates these documents were
signed for by Chuey Potter at Paris Regional Medical
Center.  Zanchi
contends that Lane failed to demonstrate that Potter had the authority to
accept service on Zanchis behalf.  Even so, Zanchi
does not deny having received Wagners report. 
Certainly, if Zanchi never received the
report, such statement would have been clearly and unequivocally articulated in
briefing filed on his behalf.  This was
not done. 

            In
Goforth v. Bradshaw, 296 S.W.3d 849 (Tex.
App.Texarkana 2009, no pet.), this Court determined that service of expert
reports and CVs means the same thing as service under Rule 21a of the Texas
Rules of Civil Procedure.  Id. at 853.  The pivotal issue in Goforth was whether the Goforths actual and
direct delivery of the documents to the defendant and his counsel by regular
mail, along with acknowledged receipt of those documents, amounted to service
under Rule 21a.  In holding that service
was indeed accomplished under the Rule, we noted the Rules purpose is to
achieve actual notice, even when the manner of delivery was not one of those
listed in Rule 21a.  Id. at 854.  Because there was actual receipt of the
notice and no harm resulted from the failure to serve the notice by registered
or certified mail, we held that service was sufficient, and the lawsuit was
improperly dismissed.  Id.

            In this case, Zanchi complains of a failure to prove Potter was
authorized to accept service on his behalf. 
Because actual notice was accomplished, and no harm resulted from any
alleged failure of authority on Potters part to sign for the report, we find
that service here was in compliance with Rule 21a.  Zanchi contends,
though, that harm resulted from the fact that the expert report was served prior
to service of the lawsuit.  He maintains
that his rights under Section 74.351(a) of the statute will be waived if
service of the expert report is authorized prior to service of the
lawsuit.  Section 74.351(a) requires that
[e]ach defendant physician or health care provider whose conduct is implicated
in a report must file and serve any objection to the sufficiency of the report
not later than the 21st day after the date it was served, failing which all
objections are waived.  Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(a).

            Because
Zanchi was served with the expert report before being
served with process, he had no duty to participate in the proceedings.  See
Caldwell, 154 S.W.3d at 97 n.1.  Absent a duty to participate in the
proceedings, Zanchi was not required to file
objections to the sufficiency of Wagners report.  Therefore, Zanchi
did not waive his right to file objections to the report.[12]  Zanchi therefore
was not harmed by service of the expert report before he was served with
process.[13]  Because Zanchi was
a party to the lawsuit at the time he was served with the expert report, and
because the report was served within 120 days of filing of the lawsuit, we hold
that, as a matter of law, the trial court did not err in refusing to dismiss
Lanes lawsuit.

            We affirm the order of the trial
court.[14]

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

 

CONCURRING OPINION

            The
Legislature has commanded that expert reports be served on a party or the
partys attorney not later than the 120th day after the date the original
petition was filed.  Tex. Civ. Prac.
& Rem. Code Ann. § 74.351 (West 2011).  Here, it is undisputed that Michael A. Zanchi, M.D., was served in accordance with Rule 21a
within that time period.  Those facts
should end the discussion, but of course it does not; Dr. Zanchi
argues that he was not a party and/or he was not served. 

            The
first argument presented here is that this service of the expert report is not
valid because Dr. Zanchi was not a party, even
though the petition had been filed naming him as such.  Chief Justice Morriss has fully explained
that the case apparently relied on by some courts for that proposition, Mapco,[15]
does not hold that service of process must be completed before the defendant
qualifies as a party.  His opinion
further contains a logical and coherent explanation of this issue.  This Court is unanimous on this issueDr. Zanchi was a party. 
I fully agree with the analysis by the Chief Justice and see no need for
further elaboration.  

            The
dissenting opinion opines that Dr. Zanchi was not
served with the expert report even though it was addressed and mailed to him
by certified letter and received at the hospital where the alleged negligence
occurred.  The Legislature, while giving
many mandates in this statute, failed to define the word serve as it relates
to the expert report.  This Court and
many others, having no statutory guidance, have concluded compliance with Rule
21a of the Texas Rules of Civil Procedure is the most logical and consistent
manner that should be employed in deciding if the report was served.  Goforth v. Bradshaw,
296 S.W.3d 849, 853 (Tex. App.Texarkana 2009, no pet.) (Under Section 74.351
of the Texas Civil Practice and Remedies Code, service of expert reports and
CVs means the same thing as service under Rule 21a of the Texas Rules of
Civil Procedure.) (citing Amaya v. Enriquez,
296 S.W.3d 781, 783 (Tex. App.El Paso 2009, pet. denied); Poland v. Ott, 278 S.W.3d 39 (Tex.
App.Houston [1st Dist.] 2009, pet. denied); Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez, 237 S.W.3d
869, 872 (Tex. App.Houston [14th Dist.] 2007, pet. denied); Herrera v. Seton Nw. Hosp., 212 S.W.3d
452, 459 (Tex. App.Austin 2006, no pet.); Kendrick
v. Garcia, 171 S.W.3d 698, 704 (Tex. App.Eastland 2005, pet. denied)). 

            Citing
no authority, the dissenting opinion posits that serving an expert report is
not governed by Rule 21a unless the defendant has previously been served with
citation; no other suggestion or definition is proposed, only that Rule 21a
should not be used.  One reason for the
employment of Rule 21a is to avoid the classic he said - she said argument
about whether the report was served or received.  That Rule provides standards and makes
service complete when the document is properly addressed, stamped, and sent by
registered or certified mail to the last known address.  Certifying that action was taken provides
prima facie evidence of service, subject to presentation of evidence of nonreceipt.  Here, an
affidavit is in the clerks file evidencing that the report was properly
addressed and sent by certified mail to Dr. Zanchi at
the Paris Regional Medical Center.  A
receipt showed that the document was received at the hospital, and Dr. Zanchi did not attempt to present contrary evidence.  Based on this information, the report was
served on Dr. Zanchi. 
Very simply, within 120 days from filing the original petition against
Dr. Zanchi, he was served with the expert report in
compliance with the statute. 

            The
dissent argues that appellate courts have held that service of citation on one
other than the addressee is defective, but the cited cases involve the service
of citation, not notices.  This
distinction makes all the difference in the world.  Citation must be served in strict accordance
with the statutes, rules, and court imposed regulations because it is the
manner in which a court acquires jurisdiction of a party; without strict
compliance the courts will not allow a default judgment to stand.  Hubicki v. Festina, 226 S.W.3d 405, 408 (Tex. 2007).  Rule 21a specifically states that it governs
notices and other documents other than the citation to be served upon filing
of a cause of action.  So the cases
cited for the proposition that strict compliance by serving the addressee only
in serving citation, are not relevant to the issue in this case.  

            Finally,
I will respond to the dissenting opinion that allowing service of the expert
report before citation has been completed requires the defendant to file an objection
to the expert report before having the duty to respond to the suit itself.  The question seems to answer itself; if the
trial court has not acquired jurisdiction of the defendant, that party is not
required to do anything, including submitting an objection to the expert
report.  When the court does obtain
jurisdiction, by the proper service of citation, just as the defendant has to
answer the suit, likewise the time begins to run on filing of the objections to
the report.  The trial court could not require
the defendant to file an objection before it acquired jurisdiction.  In essence, receiving the expert report prior
to service of citation places the defendant in the same position as if the
citation and expert report were served simultaneously.  See Stroud v. Grubb, 328 S.W.3d 561 (Tex.
App.Houston [1st Dist.] 2010, pet. denied) (expert report filed one day after
serving citation).  In this instance, the
defendant, after being served with citation, had the opportunity to file an
objection to the expert report, but instead he attempted to persuade the trial
court that he was not a party or he was not served.  Just as in Stroud where the defendant was served one day after the citation
was served, Dr. Zanchi had twenty-one days to
challenge the report.  In failing to do
so, Dr. Zanchi waived any objection.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a).  So to that extent, I disagree with Chief
Justice Morriss opinion that Dr. Zanchi may now
object.  That objection has been
waived.  

            The
Legislature determined that expert reports must be filed in order to avoid
costly, unnecessary, and unmerited legal proceedings, but unfortunately, in
this case, that goal has not been accomplished.  Here, a thirty-one-page detailed report from a
board-certified anesthesiologist was served within 120 days from the filing of
the original petition.  Instead of
engaging in expensive and time-consuming trial and appellate litigation
attempting to establish that the simple words party and serve have abstruse
meanings, these parties should be preparing for and trying their case. 

            I
concur with the result reached in the opinion of the Chief Justice. 

            

 

                                                                        Jack
Carter

                                                                        Justice

 

 

DISSENTING OPINION

            Although
I concur with the majoritys scholarly determination that a person becomes a
party to a lawsuit when he is named as such in a petition filed with a court
(as opposed to when that person is served with citation), I cannot agree with
some of the other determinations made to arrive at the majority
conclusion.  I also feel it advisable to
address potentially-determinative arguments not mentioned in the majority
opinion.

Service of Report Pursuant to Rule 21a?

            The first concern lies with the
claim by Zanchi[16]
that there was no expert report served on him pursuant to Section 74.351(a) of
the Texas Civil Practice and Remedies Code. 
Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(a) (West 2011).  The primary thrust of Zanchis
argument is based upon his definition of party, a position which, as
mentioned above, has little merit. 
However, Zanchi does mention (and the record
supports) that at the time of the supposed service of the expert report, he had
no obligation to respond because he had neither voluntarily filed a response
nor had he been served with citation pursuant to Rule 106 of the Texas Rules of
Civil Procedure or any alternate means of citation.  Tex.
R. Civ. P. 106.

            The
predecessor of Chapter 74 of the Texas Civil Practice and Remedies Code was
Article 4590i.  This now-repealed and
replaced statute, while requiring an expert report to be obtained by a health
care liability claimant, used the term furnish when speaking of delivery of a
copy of that report to the defendant.  Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d),
repealed by Act of May 16, 2003, 78th
Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847,
884 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.001 (West 2011)).  The current statute requires that claimant
serve a copy of the expert report on the defendant.  The question then arises as to whether sending
a copy of the expert report to Paris Regional Medical Center (where Zanchi served on the staff) by certified mail before he had
been served with citation and before he had an obligation to respond to the
suit complied with the obligation to serve him with a copy of the report
within 120 days of the filing of the suit. 
This is compounded by questions of whether the certified mail receipt,
signed by someone not proven to have the capacity to receive service on behalf
of Zanchi, was sufficient evidence to establish a
presumption that the report was served on him.

            A
number of intermediate appellate courts (including this Court) have determined
that the term serve as used in the statute is tantamount to service pursuant
to Rule 21a, Texas Rules of Civil Procedure.  Goforth v. Bradshaw,
296 S.W.3d 849, 853 (Tex. App.Texarkana 2009, no pet.); Amaya v. Enriquez, 296 S.W.3d 781, 783 (Tex. App.El Paso 2009, pet.
denied); Poland v. Ott,
278 S.W.3d 39 (Tex. App.Houston [1st Dist.] 2009, pet. denied); Univ. of Tex. Health Sci. Ctr. at Houston v.
Gutierrez, 237 S.W.3d 869, 872 (Tex. App.Houston [1st Dist.] 2007, pet.
denied); Herrera v. Seton Nw. Hosp.,
212 S.W.3d 452, 459 (Tex. App.Austin 2006, no pet.); Kendrick v. Garcia, 171 S.W.3d 698, 704 (Tex. App.Eastland 2005,
pet. denied). Compliance with Rule 21a sets up a presumption that when notice
of trial setting properly addressed and postage prepaid is mailed, that the
notice was duly received by the addressee.  Cliff v.
Huggins, 724 S.W.2d 778, 780 (Tex. 1987); see also Mathis v. Lockwood,
166 S.W.3d 743, 745 (Tex. 2005) (per curiam).  It stands to reason, then, that the purpose
of Rule 21a is to achieve actual notice and to set up presumptions to use in
disputes about whether notice was achieved.  See Netherland v. Wittner,
662 S.W.2d 786, 788 (Tex. App.Houston [14th Dist.] 1983, writ refd n.r.e.); Hill v. W. E. Brittain, Inc., 405 S.W.2d 803, 807 (Tex. Civ.
App.Fort Worth 1966, no writ).  Under
that rationale, in some circumstances (when it was proven that despite variance
between the means of effective service under Rule 21a, the defendant
nonetheless actually received a copy of the report within the statutory 120-day
period) when that proof was made, it was deemed that sufficient compliance with
the requirement of service of the report was made.  See Goforth, 296
S.W.3d at 854; Spiegel v. Strother, 262 S.W.3d 481 (Tex. App.Beaumont 2008, no
pet.).  There is no mention in any of
those cases, however, that the service or delivery of the expert report was
made before service of citation on the defendant had been achieved or before a
voluntary appearance had been made. 
Presumably, the case before us is unique in the fact that the report was
transmitted and received (by someone) after the suit was filed, but before the
defendant was either served with citation or had appeared. 

            Note
that when the expert report was sent by certified mail to the hospital where Zanchi commonly worked, the postal receipt was signed by
someone whom no one identified as being the authorized agent for Zanchi.  In service
of citation, the appellate courts have almost unanimously ruled that when there
is service by certified mail, if the return receipt is not signed by the addressee,
the service of process is defective.  See Sw.
Sec. Servs.,
Inc. v. Gamboa, 172 S.W.3d 90, 93 (Tex. App.El
Paso 2005, no pet.) (service defective when return receipt signed by someone
other than addressee); Ramirez v. Consol.
HGM Corp., 124 S.W.3d 914, 916 (Tex. App.Amarillo 2004, no pet.); All Commercial Floors, Inc. v. Barton & Rasor,
97 S.W.3d 723, 727 (Tex. App.Fort Worth 2003, no pet.); Keeton v. Carrasco, 53 S.W.3d 13, 19 (Tex. App.San Antonio 2001,
pet. denied); Webb v. Oberkampf
Supply of Lubbock, Inc., 831
S.W.2d 61, 64 (Tex. App.Amarillo 1992, no writ); Am. Universal Ins. Co. v. D.B.&B., Inc., 725 S.W.2d 764, 76567 (Tex. App.Corpus Christi 1987, writ refd n.r.e.); Pharmakinetics Labs., Inc. v. Katz, 717 S.W.2d 704, 706 (Tex. App.San Antonio 1986, no
writ).  Certainly, these cases deal with
attempts at service of citation and not with service of other papers under Rule
21a and a distinction can be made there. 
There is, however, a good reason to equate the application of these
citation cases to an attempt to employ Rule 21a to situations in which the
defendant has yet to have the responsibility to answer:  once a person has been served with citation or
has voluntarily appeared, there is a proven address to which such notices can
be sent.  In other words, the address for
service under Rule 21a would be either that at which he was already
successfully served or at some alternate address designated later by him in
pleadings (such as the address of his attorney).  It appears that this attempt to achieve
service of a medical expert report under Rule 21a in a health care liability
case prior to achieving service of citation may well be a case of first
impression.  The concurrence points out
that there are no cases cited here to support the proposition that the same
requirements as to service pertaining to service of citation would apply
equally to the service of an expert report to an as-yet-unserved
defendant.  Because the circumstance here
is thus far apparently unique, there are likewise no cases which can be cited
to rebut that position, either. 

            One
could liken the pre-citation service of the expert report in a health care
liability suit pursuant to Rule 21a prior to the time that a defendant has a
duty to respond to the pre-citation service of requests for admissions.  As the Texas Rules of Civil Procedure
currently stand, such requests may be served on another party no later than thirty
days before the end of the discovery period. 
Tex. R. Civ. P. 198.1.  The person receiving those requests for
admissions would have thirty days after receipt of the requests to respond to
them (fifty days if service of the requests are achieved before the defendants
answer date) or the requests can be deemed admitted without the necessity of a
court order.  Tex. R. Civ. P. 198.2.[17]  Would it be effective to serve requests for
admissions on a defendant pursuant to Rule 21a of the Texas Rules of Civil
Procedure before they were ever served with citation, wait fifty days, and deem
the requests admitted before the defendant was required to file an answer in
the lawsuit?  One would hardly think
so.  The Rules pertaining to requests for
admission are written in contemplation either that the party from whom
responses are requested is already before the court or that the requests
would be served in the same manner as citation. 

            Rule
21a service should apply only after the party is actually before the court,
either by compliance with the Rules pertaining to service of citation (e.g.,
Rule 107, Texas Rules of Civil Procedure) or by voluntary appearance.  Here, we had neither of these circumstances
at the time the expert report was mailed to Zanchi at
the hospital.  In these circumstances,
there was neither service of citation on him at some situs
nor any pleading filed by Zanchi which nailed down
the proper address for the transmission of such notices (such as the office
address of his attorney); the certified mail receipt was signed by some person whose
relationship to Zanchi remains unidentified.  Should this ploy work to establish a prima
facie case that Zanchi was served with it?  That would be the result if Rule 21a is
permitted to apply under these circumstances. 


            Since
Zanchi had not already been put in the position of
being imposed with an obligation to respond to anything in the suit, Rule 21a
should not apply to service of the expert report. Because Rule 21a was never
intended to apply under the circumstances we have here, there was no service
of the expert report on Zanchi within the prescribed
120-day time period prescribed by the statute, nor was it served in such a
manner as to suffice to meet the statutory requirement.  

            I
would rule that the attempt at service pursuant to Rule 21a before Zanchi had an obligation to respond was ineffective.

Due Diligence Exception? 

            Lane
also argued that the time requirements of Section 74.351(a) of the Texas Civil
Practice and Remedies Code do not apply if he demonstrates that due diligence
was pursued in unsuccessful attempts to serve Zanchi
with citation.  In doing so, Lane
apparently relies on a discussion of the due diligence doctrine in Stockton v. Offenbach, 336 S.W.3d 610,
615 (Tex. 2011).  In Stockton, the Texas Supreme Court explains that under the due
diligence doctrine, a plaintiff, who files a petition within the limitations
period but does not complete service until after the statutory period has
expired, is entitled to have the date of service relate back to the date of
filing, if the plaintiff has exercised diligence in effecting service.  Id.  The majority does not address this
argument.  

            The
problems with reliance on Stockton
for the proposition that the due diligence doctrine does apply and, thus,
potentially exculpates Lane from the harsh consequences of the statute are
twofold:  (1) although the supreme court
discusses and explains the doctrine, it neither actually applies the due
diligence doctrine to abrogate the dictates of the statute nor affirmatively
holds that it should not apply; (2) after examining the circumstances and the
trial courts finding that the due diligence exception did apply, it rejected
the notion that a fact issue was raised concerning . . . due
diligence in the matter and made a judicial determination that due diligence
had not been shown.  Id. at 617. 

            It
is notable here that Lane made absolutely no attempt at personal service
citation on Zanchi until about forty days after the
suit was filed.  Lane showed that the
process server made unsuccessful attempts on four occasions in June to
personally serve Zanchi at his home.  Even though the process server was aware that
Zanchi was a hospital-based physician at Paris
Regional Medical Center, he attempted personal service citation only at Zanchis home, never attempting to serve Zanchi with citation at the hospital.  Lane also showed that his attorney relied
upon a paralegals mistaken representation that Zanchi
had, in fact, been served with citation; however, there is no explanation given
by Lane for inactivity in attempts to get service during the lapse of time
between the last attempt by the process server to effect service on Zanchi at his home (June 21) and the paralegals
mistaken representation that Zanchi had been served
(August 10).  No motion for substituted
service was filed with the trial court until after the 120-day period for the
service of the expert report had already expired.  Personal service citation was finally served
when the process server located Zanchi exiting his
home when the process server was attempting to serve a substituted process.  What this does not take into account is that
Lanes attorney, apparently realizing that the 120-day period for serving the
expert report loomed like the messenger of death, did not send the expert
report to Zanchis home (where all attempts at
service of citation had been made), but to the hospital where he worked.  The majority has found this service of the
expert report was effective.  Many people
work during the day and would be absent from their homes.  It appears oxymoronic for this Court to make a
finding that service of the expert report on Zanchi
pursuant to Rule 21a was effective when it was sent by certified mail addressed
to him at the hospital address (this apparently having been construed by Lane
as Zanchis last known address so as to comply with
Rule 21a), yet fail to address the issue of due diligence when no effort was
made to serve Zanchieither by personal service or
by certified mailat the hospital address. 
Due diligence would have dictated that service of the citation and the
expert report would have been attempted at the place of Zanchis
employment promptly after efforts were unsuccessful at his home.  As to the erroneous representation to Lanes
attorney that Zanchi had actually been personally
served with citation, the error of the paralegal amounts to error by Lanes
lawyer and would not provide grist for the claim of due diligence.  

            Lane
has failed to show facts necessary to support a due diligence claim as a matter
of law.

Statutory Construction?

            The
third point relates to the difficulty of reconciling the statute to the
procedures to be followed once one allows the service of the expert report
before service of citation on the defendant. 

            The
relevant statute reads as follows:

In a health care liability claim, a claimant
shall, not later than the 120th day after
the date the original petition was filed, serve on each party or the
partys attorney one or more expert reports, with a curriculum vitae of each
expert listed in the report for each physician or health care provider against
whom a liability claim is asserted.  The
date for serving the report may be extended by written agreement of the
affected parties.  Each defendant
physician or health care provider whose conduct is implicated in a report must file and serve any objection to the
sufficiency of the report not later than the 21st day after the date it was
served, failing which all objections are waived.

 

Tex.
Civ. Prac. & Rem. Code Ann. § 74.351 (West
2011) (emphasis added).

            This
sets out two critical times, one for the service of the expert report by the
claimant and one for the filing of service of objections to that report by the
physician or health care provider. 

            If
one, for instance, employs the due diligence exception to stall the
requirement, then the health care provider who has been served with the expert
report (but who has no obligation to respond to the lawsuit) must file his
objections to the expert report before he has the duty to respond to the suit
itself.  The answer proposed by Lane to
that dilemma is to apply a relate back time to extend the time for filing
objections to the time the defendant must file an answer to the suit in
chief.  

            If
the relate back time is used, this not only impacts the date that service of
the expert report must be delivered, it also dictates that the statutory time
for filing objections to the report be likewise amended.  Accordingly, if a court unilaterally tampers
with the statutory deadline for the service of the expert report, in a
circumstance like this it must also extend the time for lodging objections to
it; otherwise, the time permitted for lodging objections to the report would be
nullified.  Accordingly, in order to do
so, the court extending deadlines must rewrite the statute in an additional
cogent spot.

            In
Stockton, the Texas Supreme Court
acknowledged that difficulty can arise because of the way the statute is
written.  After making that observation,
however, the supreme court stated that [t]he Legislature, however, has chosen
to commence the 120-day period from the date of filing, and we are not free to
rewrite the statutes to reach a result we might consider more desirable, in the
name of statutory construction.  Stockton, 336 S.W.3d at 619 (citing Pub.
Util. Commn of Tex. v. Cofer, 754 S.W.2d 121, 124 (Tex. 1988)).

            A
courts primary objective in construing statutes is to give effect to the
Legislatures intent.  Galbraith Engg
Consultants, Inc. v. Pochucha, 290 S.W.3d 863, 867 (Tex. 2009).  The plain meaning of the text is the best
expression of legislative intent unless a different meaning is apparent from
the context or the plain meaning leads to absurd or nonsensical results.  See City of Rockwall v. Hughes, 246 S.W.3d
621, 62526 (Tex. 2008).

            Words
can be vague and may have multiple shades of meanings, even completely opposite
meanings (e.g., ravel, adjure, avocation, and inure).  Even though the word filed may have
different meanings in other contexts, in the context of Section 74.351, it has
only one.  Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351.  In that context, it means the
date that the suit has been instituted against the health care provider; that
can only mean that the claimant has 120 days from the date that the medical
provider was made a defendant in the suit to serve the expert report. 

            To
be sure, the way the Legislature drafted this legislation presents a
potentially onerous (and, possibly, even ruinous) burden on a claimant against
a physician or other health care provider in dictating the time that an expert
report must be served on the defendant. 
It is, however, not a necessarily impossible burden.  

            The
courts of appeals are obligated to follow the determinations of the Texas
Supreme Court in determining the law.  See In re K.M.S., 91 S.W.3d 331 (Tex.
2002).  Given the strict adherence to the
principles the Legislature laid down in adopting the Medical Liability law (Tex. Civ. Prac.
& Rem. Code Ann. §§ 74.001.507 (West 2011)), if it will determine
that a suit arising after a spider bite is a health care liability claim,[18]
it will also determine that Lane failed to meet the obligation in serving Zanchi with the expert report as required. 

            Due to these reasons, I would rule
that the expert report was not served on Zanchi in
accord with the statute and direct the dismissal of Lanes suit. 

 

 

                                                            Bailey C.
Moseley

                                                            Justice

 

Date Submitted:          June 29, 2011

Date Submitted:          September 1, 2011











[1]Michael
A. Zanchi, M.D., P.A., and Paris Regional Anesthesia,
P.A., were named defendants with Zanchi.  The three Zanchi
defendants are hereinafter collectively referred to as Zanchi.

 





[2]In
2007, Ross was diagnosed with a condition known as idiopathic thrombocytopenic purpura (ITP) and was informed that she would have to
undergo a splenectomy as part of the treatment for
this condition.  Ross was admitted to
Paris Regional Medical Center for surgery in February 2008.  The original petition alleged that Ross
became cyanotic and a code blue was called to attempt to resuscitate her.  Zanchi returned to
the operating room, where he extubated the endotracheal tube and initiated multiple attempts to reintubate Ross. 
After her pulse was restored, Ross was transferred to Baylor University
Medical Center in Dallas, where it was determined that her brain was
functioning only at the level of the brain stem.  Ross was removed from life support.  

 





[3]The
trial court issued an order dated September 7, 2010, authorizing substituted
service on Zanchi. 
The trial court specifically found that Lanes previous attempts to
serve Zanchi were unsuccessful.  Zanchi was
ultimately served with process personally while the process server was
proceeding to execute substituted service. 


 





[4]Wagners
report concludes that Zanchi improperly placed the endotracheal tube in the right main-stem bronchus and
failed to reposition the tube during surgery. 

 





[5]The
expert report was mailed to Zanchi at Paris Regional
Medical Center.  The return receipt or
green card was signed by Chuey Potter.  While Zanchi does
not admit that he received this report, neither does he deny having received
it.

 





[6]Lane
contends service of the expert report in this instance is sufficient because he
exercised due diligence in serving Zanchi with
process.  Because the party issue is
dispositive and because inherent uncertainties surround the due diligence
analysis, we do not reach this issue.

 





[7][A]
trial court has no discretion in determining what the law is, which law
governs, or how to apply the law.  Univ.
of Tex. Health Sci. Ctr. at Houston v. Gutierrez, 237 S.W.3d 869, 871 n.1 (Tex. App.Houston [1st Dist.] 2007,
pet. denied); see also Buck v. Blum, 130 S.W.3d 285, 290 (Tex. App.Houston [14th Dist.] 2004, no
pet.) (de novo standard of review applies in reviewing interpretation of health
care liability statute).





[8]Our
sister courts in Fort Worth, Austin, and Corpus Christi have used the definition
of party as one who has been served with process, waived service of process,
or made an appearance.  See Dingler v. Tucker, 301 S.W.3d 761, 76667 (Tex. App.Fort Worth 2009, pet.
denied) (defendant named in original petition did not become party until served
with process); Carroll v. Humsi, 342 S.W.3d 693, 701 (Tex. App.Austin 2011, no
pet.) (term party denotes defendant who has already been served with process,
waived service, or entered an appearance in the action); Carreras v. Zamora, 294 S.W.3d 348, 350 (Tex. App.Corpus
Christi 2009, no pet.) (to be party to lawsuit, one must generally be served,
accept or waive service, or make an appearance).  We respectfully disagree.





[9]The
court clerk is to keep a record of the names of the parties to the suit,
without any suggestion that a name not be registered as a party unless he or
she has been served with citation.  See Tex.
R. Civ. P. 25, 26.  A judge must
disqualify from a case if a party is related to the judge.  Tex.
R. Civ. P. 18b.  There is no
suggestion that the judge should wait to recuse until
his or her relative is served with process.

 





[10]Consistent
with this definition are definitions found in online legal sources.  A party is a person or entity who is the
plaintiff or defendant in a lawsuit.  www.legal-dictionary.org.  Party with reference to an action means a
person who is described in the court of record as plaintiff or defendant. Thus,
it means a person by or against whom a legal suit is brought.  www.USLegal.com.  A party is

 

one of the participants in a
lawsuit or other legal proceeding who has an interest in the outcome. Parties
include plaintiff (person filing suit), defendant (person sued or charged with
a crime), petitioner (files a petition asking for a court ruling), respondent
(usually in opposition to a petition or an appeal), cross-complainant (a
defendant who sues someone else in the same lawsuit), or cross-defendant (a
person sued by a cross-complainant). . . .

 

http://dictionary.law.com.





[11]Our
determination that Zanchi was a party to the lawsuit
when named in a petition duly filed with the clerk of record does not diverge
from the substantive holdings in Mapco
(judgment shall not be rendered against any defendant unless upon service, or
acceptance or waiver of process, or upon an appearance), Ross (trial court is without jurisdiction to enter or enforce
judgment against party who had neither been served nor appeared), and Caldwell (party who becomes aware of the
proceedings without proper service of process has no duty to participate in
them).  Our holding does not suggest that
a person or entity that has merely been sued, but not served with process, has
any duty to participate in the proceedings; certainly, Zanchi
had no duty to participate in the proceedings until such time as he was
properly served with process.





[12]Out
of an abundance of caution, Zanchi may wish to do so
within twenty-one days after issuance of this opinion.  But we offer no opinion on this particular
issue.

 





[13]At
the dismissal hearing, counsel for Lane stated, I think we put in our response
that we certainly would not object to them having their opportunity at that
point to make their objections.  Were
not trying to play games here. 

 





[14]Because
we hold that Lane properly and timely served the expert report on Zanchi, a party to the lawsuitand has therefore complied
with the statutewe do not reach the issues of whether a due diligence exception
exists that might forgive a lack of compliance by Lane or whether Lane would
qualify for such an exception.





[15]Mapco, Inc. v. Carter, 817 S.W.2d 686
(Tex. 1991) (per curiam).  The Texas Supreme Court stated that the issue
in Mapco was whether a judgment may
be entered against a party, not before the trial court.  Id.
at 686.  The plaintiffs sued Mapco
Underground Storage of Texas, Inc. (MUST) for waste and to partition a mineral
estate.  Mapco, Inc., was a separate
legal entity.  From the discussion in the
opinion, it is clear that Mapco, Inc., was never named as a party to the
lawsuit (the Carters pleadings identified only MUST as a party . . . ), Id. at 687, but a judgment was entered
against Mapco, Inc.  The holding of the
Texas Supreme Court was simply that Mapco, Inc. (not MUST) was never named as a
party in the proceeding, did not voluntarily appear, and therefore, any
judgment against it was erroneous.  In
the appellants brief, the following statement is made:  Merely being named in a petition as a
defendant does not make one a party to the lawsuit.  The Mapco
case is the only cited authority for that proposition.  After carefully reading the Mapco case, we cannot find any such
statement; Mapcos holding is that a
judgment cannot be rendered against a corporation that was never named or
appeared as a party, but Mapco does
not give any support to the appellants statement that being named in a
petition as a defendant does not make one a party to the lawsuit.  We call this major improper attribution to
the attention of counsel and remind counsel of the duty of candor to the
court.  





[16]The
appellants here are treated as singular under the name Zanchi
in the singular.  Reference to the appellee is made as Lane.





[17]In
Steffan v. Steffan,
29 S.W.3d 627, 630 (Tex. App.Houston [14th Dist.] 2000, pet. denied), it was
determined that after a person has been served with citation and after that
person has attended a hearing and made a pro se approval of temporary orders,
it is not required that he file a responsive answer before he has the
obligation to respond to requests for admissions or risk having them deemed
admitted.





[18]Omaha Healthcare Ctr., LLC v. Johnson, No.
08-0231, 2011 Tex. LEXIS 506 (Tex. July 1, 2011).